## MIDLAND NATIONAL LIFE INSURANCE COMPANY v. L. H. WILSON.[1]

May 14, 1937.

No. 31,295.

*M. J. Meeker,* for appellant.
*Hall & Catlin,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff appeals from an order denying its blended motion for judgment notwithstanding or new trial. (To be noted is the fact that plaintiff made no motion for direction of verdict, hence for review there is no occasion to inquire into the propriety of the court's order insofar as the motion for judgment is concerned.)

[1]Reported in 273 N. W. 195.

The facts as set forth by plaintiff in its brief may be summarized thus: On December 19, 1929, defendant applied for, and on the 26th plaintiff issued, a policy of life insurance for $5,000. A rider was attached thereto making provision for payment of permanent disability benefits at $50 per month if, while the policy was in force and the insured less than 60 years of age, he should become totally and permanently disabled. The first year's premium, $201.15, of which $180.25 represented the premium for the life insurance and $20.90 total and permanent disability insurance, was duly paid. On November 12, 1930, the policy being in full force and effect, defendant notified plaintiff that he had become totally and permanently disabled by reason of a lung tumor and that this disability had existed since July 19 of that year. Plaintiff furnished defendant with appropriate forms for proof of his claim. These were promptly executed and sent to plaintiff's home office in South Dakota. The proofs were found satisfactory, and on April 13, 1931, payment of the first $50 monthly disability benefit was made. Thereafter, to and including June 13, 1935, these monthly payments were promptly made, so that defendant has been paid in all $2,600. In addition thereto, all premium payments (subsequent to the first) were waived, same amounting to $1,005.75. This suit was brought in October, 1935, upon the claim that defendant's disability had its inception at a time prior to the date of the policy. It is averred that "plaintiff was not made aware of the facts" and "did not know of the falsity" of defendant's "application until the first day of October, 1935." Recovery was sought for the $2,600 paid as disability benefits and for annulment of the policy as to "total and permanent disability." Issue was joined, defendant denying the allegations pleaded by the plaintiff for the relief sought, and counterclaimed for all instalments falling due after June 13, 1935. These amounted to $350 at the time of trial, and in that amount the court ordered judgment for defendant, plus interest upon each instalment from its respective due date.

At the trial counsel agreed that the following question should be submitted as a jury issue: "Did the disease which caused the

disability of defendant Wilson exist in whole or in part on or before December 26, 1929?" The jury's answer was in the negative.

Plaintiff's position is thus stated in its brief: "But one issue was tried in the court below and one issue only is involved in this appeal, namely, was the answer of the jury to the interrogatories [there was but the one quoted] submitted conformable to the proof adduced at the trial?" For reversal its only claim is that the jury's verdict is "contrary to the weight of the evidence."

■ The purpose of furnishing proof of loss under a policy of insurance is to provide the insurer with information from which it may determine its liability. Wold v. State Mut. L. Assur. Co. 198 Minn. 451, 270 N. W. 150. That defendant furnished such proof in conformity with his policy contract and that this was considered adequate by plaintiff over a period of four years and four months cannot be, nor is it, disputed. Diligence on plaintiff's part in ascertaining the facts, if contrary to what defendant asserted, is wholly lacking.

■ Going directly to the only fact issue, we find that defendant had been operating a store at Ihlen, this state, over a period of many years. He had always enjoyed good health and, as far as he knew when the application for insurance was made, was in perfect health. His work required him to do heavy lifting, amongst other things the handling of 100-pound bags of feed. His appetite was good. He worked hard, slept well, and was a man of physical strength and well-being. His normal weight was approximately 189 pounds. In May, 1930, he became suddenly ill and suffered a great deal of pain and cramps in the upper part of his abdomen and under his right lower ribs. He had a fever and did considerable vomiting. This was something entirely new to him. He called his family physician, Dr. Kendall, who took his case in hand. The doctor recommended that defendant go to Sioux Falls and there confer with Dr. Opheim, the chief medical examiner for plaintiff company. Defendant did so and was treated by him at the Sioux Falls hospital, staying there approximately two weeks. He returned home in July. At that time his chest was aspirated and a yellow

fluid extracted. His condition gradually grew worse so that his weight dropped from 189 pounds to 149 pounds on September 13. He continued to lose weight so that on March 17, 1931, he weighed only 100 pounds. He has been treated by many doctors, including the Mayo Clinic, where he was admitted in September, 1930, staying there and taking treatments over a period of some three weeks. He has lost the functioning of his right lung, is unable to do any work worth-while, and is aging prematurely. His memory is rapidly failing. As a matter of fact, there is no real dispute respecting his total disability. The only question is whether his condition had its inception prior to the time he was insured.

Plaintiff's medical witnesses base their opinions upon hypothetical questions. Of those testifying for defendant several were personally acquainted with defendant's condition. Their views were founded upon knowledge gained directly and from personal observation. That there is conflict may be conceded. But such was necessarily for the triers of fact. We think there is ample medical testimony to the effect that defendant's trouble commenced on or about May 24 or 25, 1930; that the primary cause of his trouble was pleurisy with effusion later developing pus. His condition "went on from bad to worse and finally broke into the bronchus," at which time defendant commenced expectorating pus. It may not be amiss to note that plaintiff's chief medical examiner, Dr. Opheim, by whom defendant was treated professionally shortly after the May, 1930, attack, was not called as a witness nor was his absence explained. The record compels the conclusion that the tumor in defendant's lung could not have been malignant. Had it been he would have died long prior to the time the case was tried. Even plaintiff's experts concede this.

Of necessity, upon plaintiff rested the burden of establishing its cause. Hence our only inquiry is whether there is any evidence reasonably tending to support the verdict and the findings of the court. We have examined the testimony as made by the record and have come to the conclusion that not only are the verdict and the findings of the court well sustained, but had the verdict and

findings been to the contrary we should find it extremely difficult to sustain them.

Affirmed.